SAMUEL, Judge.
This suit, filed by the husband, seeks a separation from bed and board on the ground of cruel treatment. The defendant wife answered, denied the charges and reconvened for a separation on the grounds of cruel treatment and abandonment. Defendant has appealed from a judgment of separation from bed and board in favor of plaintiff, which judgment dismissed her re-conventional demand.
A considerable part of the testimony is conflicting. However, some of the facts are either uncontradicted or established beyond reasonable question, and these facts are:
At the time this suit was filed the litigants had been married, apparently happily, for more than 23 years and had two children a boy 20 years of age in the army, and a girl 18 years of age in school. While the son was in service in Oklahoma he was befriended by a Mr. and Mrs. Edward Hughes who lived in that state. They visited the son and entertained him at their home on several occasions. The defendant’s sister, Mabel, was the wife of Lonnie Hughes, a brother of Edward Hughes. Mr. and Mrs. Edward Hughes later moved to Jefferson Parish and they and the litigants saw each other frequently.
On one such occasion the litigants, their daughter and one of her friends, and Mr. and Mrs. Edward Hughes attended a dance at a cafe in Raceland, Louisiana, where plaintiff’s brother, Paul, worked as a bartender. At that time the incident which gave rise to some of the trouble between plaintiff and defendant took place. Plaintiff and Mrs. Hughes kissed while dancing with each other on a dance floor occupied by other couples and while only several feet away from the balance of their party including the defendant and the daughter. Defendant did not see the incident; the daughter and others did.
Approximately two months later defendant began accusing plaintiff of flirting with Mrs. Hughes and of infidelity. In the presence of plaintiff the daughter told the defendant about the kissing incident between him and Mrs. Hughes. Plaintiff denied the incident; the daughter, in effect, called him a liar; and he slapped or struck her. Thereafter defendant insisted that her husband would have to stop seeing Mrs. Hughes. He refused to do so and continued to visit with the Hughes family as he and his wife had done in the past.
From then on matters went from bad to worse. The defendant refused to have *834 marital relations with, her husband and he was forced to leave their bed room and sleep elsewhere in the house. She continued to accuse him of infidelities and refused to prepare his meals or launder his clothes. When defendant filed non-support charges against plaintiff in the juvenile court (she received an alimony award in the amount of $35.00 per week), plaintiff left the matrimonial domicile. The departure from the matrimonial domicile took place several months after plaintiff’s wife began accusing him of infidelities.
Plaintiff testified that his wife’s accusations arose as a result of what she had been told by her sister and brother-in-law, Mabel and Lonnie Hughes, who had quar-relled, and were no longer friendly, with Mr. and Mrs. Edward Hughes; and that he would not allow his wife’s sister and her husband to run him or his family. He asked his wife to accompany him on visits to and with the Edward Hughes’ as they had in the past but she refused. At least a part of this testimony is correct even according to the defendant. Although she testified her husband continually was going out with Mrs. Hughes, she admitted that she had never seen the two alone together but that her sister and brother-in-law, Mabel and Lonnie Hughes, had seen them and had told her about those incidents. The sister and brother-in-law did not testify at the trial.
Defendant testified that her husband, who during their previous married life regularly had turned his full pay check over to her, refused to support her and their daughter. She also denied that she refused to cook or launder clothes for her husband but the record preponderates to the contrary. The question of support prior to the filing of non-support charges was the subject of conflicting testimony. Plaintiff said he stopped turning over his full pay check to his wife only after it became necessary to use some of the money for his food and laundry, but that he always furnished her money for herself and their daughter. Defendant’s pleadings allege plaintiff refused to furnish her any money for a period of three weeks. We conclude that some support was furnished and that defendant’s accusations to the contrary were exaggerated.
The daughter testified her father had told her that he was having an affair with Mrs. Hughes. Obviously the trial court did not believe her testimony, and neither do we.
The record is devoid of any proof, other than the kissing incident which we have mentioned, of any indiscrete or improper actions between plaintiff and Mrs. Hughes. We consider the kissing incident as being relatively unimportant and magnified out of all proportion by the defendant. It is quite clear that there was no attempt to conceal the incident, not even from the defendant herself. And in view of the exaggerated importance attached to it by his wife, we can understand plaintiff’s denial of its occurrence. It is true that plaintiff continued to visit with the Hughes family after his wife began her accusations. He admitted such visits while denying that anything improper had occurred. But Mr. and Mrs. Hughes lived with their three children and Mrs. Hughes’ mother. And the only evidence relative to Mrs. Hughes and the plaintiff being together alone related to two isolated occasions, both of which occurred during the day time when those two parties were seen driving in an automobile. One of these occasions took place when plaintiff drove Mrs. Hughes to a store and then to her husband’s work where the latter joined them. The other incident was testified to by a neighbor, Mrs. Matherne, who was able to say she had seen the two people together on only one occasion and was unable to set the time of that occurrence. The plaintiff testified that on the occasion Mrs. Matherne referred to he was driving Mrs. Hughes back home from his lawyer’s office and this testimony appears to be correct. At the time of the trial Mr. and Mrs. Hughes were living in Houston. Nevertheless they returned to testify and their *835 testimony is completely in favor of the plaintiff.
We have considered the possibility of mutual fault operating as a bar to relief being given to either litigant, particularly in view of a remark made by the district judge at the conclusion of the trial when he stated that he found fault on both sides, referring to the fact that there was “plain hardheadedness on each side”. The rule in Louisiana is that only mutual and equal or nearly balanced fault, of a similar nature, operates as a bar to relief being given to either litigant. Gilbert v. Hutchinson, La.App., 135 So.2d 283; Eals v. Swan, 221 La. 329, 59 So.2d 409; Hammonds v. Caballero, 207 La. 1090, 22 So.2d 660; Temperance v. Herrmann, 191 La. 696, 186 So. 73; Gormley v. Gormley, 161 La. 121, 108 So. 307; see also Magliolo v. Magliolo, La.App., 135 So.2d 616.
As the trial judge was familiar with this rule, he must have found, as do we, that the fault on the part of the wife outweighed that on the part of the husband.
The primary question presented by this appeal is one of fact and we cannot say that the finding of facts by the trial court was so erroneous and unsupported by the evidence as to warrant a reversal. To the contrary, we agree with that finding. Defendant’s refusal to have marital relations with her husband, her continued accusations, without proven reasonable provocation, of infidelities on his part, and her refusal to prepare his meals or launder his clothes constitute sufficient grounds for a judgment of separation from bed and board in his favor and sufficient cause for leaving the matrimonial domicile as he eventually did. Seeling v. Seeling, La.App., 133 So.2d 161; Callahan v. Callais, 224 La. 901, 71 So.2d 320; Bonvillion v. Papa, 218 La. 203, 48 So.2d 897.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
YARRUT, J., dissents with written reasons.